UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FIRST COMMONWEALTH BANK, | § | |
| | § | |
|   Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:25-CV-3080-B |
| | § | |
| COMPASSION HOSPICE OF TEXAS | § | |
| LLC, et al., | § | |
| | § | |
|   Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff First Commonwealth Bank ("FCB")'s Motion for Default Judgment (Doc. 10). For the reasons provided below, the Court **GRANTS** the Motion. A final judgment will follow.

## I.

## BACKGROUND

This case involves several breaches of contract. In 2023, FCB provided a $470,000 commercial loan to Defendants Tailor-Made Senior Services LLC, Compassion Hospice of Texas LLC, and Amanda Jesdanie Silva (collectively "Borrowers"). *See* Doc. 1, Compl. ¶¶ 9-10. The loan's terms are reflected in a U.S. Small Business Administration note (the "Note") and a separate business loan agreement. *See id.* ¶ 10; *see generally* Doc. 1-1, Compl. Ex. 1 (hereinafter cited as "Note"); Doc. 1-2, Compl. Ex. 2, Loan Agreement. The Note obligates Borrowers to make regular monthly payments toward both the principal loan amount and interest. *See* Note, 1.

To secure repayment of the Note, Defendants New Dawn Hospice Inc. and Tailor-Made Financial Services LLC (collectively "Guarantors") agreed to serve as unconditional guarantors. Under their respective guaranty agreements, both Guarantors agreed to pay all amounts owing under the Note. *See generally* Doc. 1-3, Compl. Ex. 3, New Dawn Hospice Guaranty; Doc. 1-4, Compl. Ex. 4, Tailor-Made Fin. Servs. Guaranty.

Borrowers failed to make payments due under the Note, and in October 2025, FCB provided both the Borrowers and Guarantors with notice of the default. *See* Doc. 1, Compl. ¶¶ 12-13. No Defendant has since repaid the debt, and this lawsuit ensued. *See id.* ¶¶ 15-16.

FCB brings causes of action for breach of contract against the Borrowers for breaching the Note and against Guarantors for breaching their respective guaranty agreements. *See id.* ¶¶ 17-26. On December 3, 2025, FCB served all Defendants with the Complaint. *See* Doc. 5, Proof Service, 2; Doc. 5-1, Proof Service, 2; Doc. 5-2, Proof Service, 2; Doc. 5-3, Proof Service, 2; Doc. 5-4, Proof Service, 2. But Defendants did not respond to the Complaint or otherwise appear. So, on February 10, 2026, the clerk of court entered default against all Defendants. *See* Doc. 9, Entry Default. Now FCB, by the present Motion, asks the Court to enter default judgment. *See generally* Doc. 10, Mot. FCB requests actual damages and interest totaling $468,045.57; pre-judgment interest from March 5, 2026, to the date of judgment; post-judgment interest; and attorney's fees and costs totaling $79,065.27. *See id.* at 10.

The Court considers the Motion below.

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 55, upon motion of the plaintiff, federal courts have the authority to enter a default judgment against a defendant who has failed to plead or otherwise defend. Fed. R. Civ. P. 55(a), (b)(2). That being said, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (footnotes and citations omitted). A party is not entitled to a default judgment merely because the defendant is technically in default. *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). Instead, "default judgment is committed to the discretion of the district court." *Chevron Intell. Prop., LLC v. Allen*, No. 7:08-CV-98-O, 2009 WL 2596610, at *2 (N.D. Tex. Aug. 24, 2009) (O'Connor, J.) (citing *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977)).

In determining whether a default judgment should be entered against a defendant, courts have developed a three-part analysis. *J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 813 (N.D. Tex. 2015) (Boyle, J.) (citation omitted). First, courts consider whether the entry of a default judgment is procedurally warranted. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Second, courts assess the substantive merits of the plaintiff's claims and determine whether there is "a sufficient basis in the pleadings for the judgment." *See Nishimatsu Constr. Co. v. Hou. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *see also id.* (noting that "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover" (citations omitted)). "Third, courts determine what form of relief, if any, the plaintiff should receive." *Morelia Mexican*, 126 F. Supp. 3d at 814 (citation omitted).

## III.

## ANALYSIS

The Court concludes that a default judgment is procedurally warranted and supported by a sufficient factual basis. The Court also rewards damages to the extent indicated below.

A.      *An Entry of Default Judgment is Procedurally Warranted.*

To determine whether default judgment is procedurally warranted, the Court considers a list of factors set forth by the Fifth Circuit, known as the *Lindsey* factors:

> [1] whether material issues of fact are at issue; [2] whether there has been substantial prejudice; [3] whether the grounds for default are clearly established; [4] whether the default was caused by a good faith mistake or excusable neglect; [5] the harshness of a default judgment; and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey*, 161 F.3d at 893 (citation omitted).

Applying the six *Lindsey* factors to FCB's Motion, the Court determines that default judgment is procedurally warranted. First, Defendants have not filed a responsive pleading, so there are no material facts in dispute. *See id.*; *Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well pleaded allegations of fact"). Second, Defendants' "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing [FCB's] interests." *Ins. Co. of the W. v. H & G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at *3 (S.D. Tex. Oct. 5, 2011) (other citation omitted) (citing *Lindsey*, 161 F.3d at 893). Third, the grounds for default are clearly established because Defendants have not responded to the Complaint (served over 6 months ago) or present Motion (pending three months); nor has any Defendant explained its failure to respond. *Cf. Ann Best Elite Temporaries, Inc. v. KNR Grp., Inc.*, 216 F.3d 1080 (5th Cir. 2000) (per curiam) (holding default judgment to be inappropriate where

defendant sent letter to court explaining that his failure to appear was due to financial privation). Fourth, there is no evidence before the Court to indicate that Defendants' silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Fifth, "default judgment would not be unduly harsh in these circumstances because [Defendants] w[ere] properly served, failed to appear, and [are] in default." *Cellular S., Inc. v. C-Spire Consulting Servs. Private Ltd.*, No. 3:25-CV-01756-X, 2026 WL 453189, at *2 (N.D. Tex. Feb. 18, 2026) (Starr, J.). Sixth, and finally, the Court is not aware of any facts that would give rise to "good cause" to set aside the default if challenged by Defendants. *See Lindsey*, 161 F.3d at 893 (quoting previous version of Fed R. Civ. P. 55(c)). Therefore, the Court concludes that default judgment is procedurally proper.

B.      *There is a Sufficient Basis for Judgment in the Pleadings.*

Next, the Court reviews the pleadings to see if FCB can establish a viable claim for relief. *See Nishimatsu Constr.*, 515 F.2d at 1206. Due to their default, Defendants admit all well-pleaded facts in the Complaint. *See id.* But a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.*

In conducting this portion of the analysis, "the Fifth Circuit looks to the [Federal Rule of Civil Procedure 8] case law for guidance." *Morales v. Rausch Grp. & Assocs., LLC*, No. 3:19-CV-2850-B, 2020 WL 6583023, at *3 (N.D. Tex. Nov. 10, 2020) (Boyle, J.) (citation omitted). "Rule 8(a)(2) requires a pleading to contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015). "The factual allegations in the complaint need only 'be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Id.* (citation omitted). But "the pleading must present 'more than an unadorned, the-

defendant-unlawfully-harmed-me accusation.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In the subsections that follow, the Court considers whether FCB has sufficiently pleaded its breach of contract claims against both the Borrowers and the Guarantors. It has. FCB sufficiently pleaded that the Borrowers materially breached the terms of the Note and that each Guarantor materially breached the terms of its respective guaranty agreement. Accordingly, the Court finds that there is a sufficient basis for judgment for both of FCB's claims.

1.     FCB Has Sufficiently Pleaded the Elements of Breach of Contract Against Borrowers.

In the promissory note context, a Texas breach of contract claim requires the plaintiff to allege "(1) the existence of the note in question; (2) that the party sued signed the note; (3) that the plaintiff is the owner or holder of the note; and (4) that a certain balance is due and owing on the note." *OYO Hotels, Inc. v. Parmar*, No. 3:23-CV-1602-B, 2024 WL 4051755, at *10 (N.D. Tex. Sept. 3, 2024) (Boyle, J.) (citation omitted); *see C3 Venture Flint, LLC v. Blue Dog Holdings, Inc.*, No. 05-21-00863-CV, 2022 WL 17335687, at *3 (Tex. App.—Dallas Nov. 30, 2022, no pet.).

Taking FCB's well-pleaded allegations as true, it has sufficiently pleaded each of the above elements against Borrowers. First, FCB pleaded the existence of, and attached to its Complaint, the Note. *See* Doc. 1, Compl. ¶ 10; *see generally* Note. Second, the Note is signed by each Borrower. *See* Note, 3. Third, FCB pleaded that it is the owner and holder of the Note. *See* Doc. 1, Compl. ¶ 18. And fourth, FCB pleaded that a particular amount—$449,423.18—is due and owing under the Note. *See id.* ¶ 16.

2.    FCB Has Sufficiently Pleaded the Elements of Breach of Contract Against Guarantors.

In the guaranty context, a Texas breach of contract claim requires the plaintiff to allege "(1) the existence and ownership of the guaranty contract; (2) the terms of the underlying contract by the holder; (3) the occurrence of the conditions upon which liability is based; and (4) the failure or refusal to perform the promise by the guarantor." *OYO Hotels*, 2024 WL 4051755, at *10 (citation omitted); *see Chahadeh v. Jacinto Med. Grp., P.A.*, 519 S.W.3d 242, 249 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

Taking FCB's well-pleaded allegations as true, it has sufficiently pleaded each of the above elements against Guarantors. First, FCB pleaded the existence and ownership of Guarantors' respective guaranty contracts. *See* Doc. 1, Compl. ¶¶ 11, 23. Both agreements are attached to the Complaint. *See* Doc. 1-3, Compl. Ex. 3, New Dawn Hospice Guaranty, 3; Doc. 1-4, Compl. Ex. 4, Tailor-Made Fin. Servs. Guaranty, 3. Second, FCB, pleaded the terms of the "underlying contract"— the Note. *See* Doc. 1, Compl. ¶¶ 9-10; *see generally* Note. Third, FCB pleaded that Borrowers defaulted on their obligations to make payments under the Note, thereby obliging the Guarantors to step in. *See id.* ¶¶ 9, 12-13. And fourth, Guarantors, despite being made aware of the Borrower's default, did not then pay the debt. *See id.* ¶¶ 13-14.

In sum, FCB has sufficiently pleaded its breach of contract claims against both the Borrowers and the Guarantors.

C.    *The Court Awards Actual Damages, Attorney's Fees and Costs, and Pre- and Post-Judgment Interest.*

Having found sufficient basis for default judgment, the Court must consider any damages to which FCB is entitled. Normally, courts should not award damages without a hearing unless detailed affidavits establish the necessary facts. *See Morelia Mexican*, 126 F. Supp. 3d at 813 (citing *United*

*Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)). But a hearing is unnecessary if the court can calculate those damages by referencing the pleadings and supporting documents. *Id.* (citing *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993)). FCB requested actual damages, attorney's fees, and costs. The Court finds that no hearing is required and awards $465,863.56 in actual damages and $9,440.27 in attorney's fees and costs. The Court also awards pre- and post-judgment interest.

    1.       <u>The Court Awards $465,863.56 in Contract Damages.</u>

"Damages in a breach of contract case are generally measured as just compensation for losses actually sustained as a result of the breach and are meant to restore the injured party to the position he would have occupied had the breaching party performed the contract." *ARV Offshore Co. v. Con-Dive, LLC*, 514 F. App'x 524, 527 (5th Cir. 2013) (other citation omitted) (citing *Lafarge Corp. v. Wolff, Inc.*, 977 S.W.2d 181, 187 (Tex. App.—Austin 1998, pet. denied)). Such damages must be the "natural, probable, and foreseeable consequence of the defendant's conduct." *Mead v. Johnson Grp., Inc.*, 615 S.W.2d 685, 687 (Tex. 1981) (citations omitted).

FCB seeks $468,045.57 in contract damages. *See* Doc. 10, Mot., 8. As calculated on March 5, 2026, this amount is itemized as unpaid principal balance of $431,698.16, unpaid accrued interest of $30,689,01, late charges of $3,476.39, and a "curtailment penalty" fee of $2,182.01. *See id.* These calculations are supported by the sworn declaration of Ronald T. DiBiase—a Vice President and Loan Workout Officer for FCB. *See* Doc. 10-1, Mot. Ex. A., Decl. DiBiase ¶¶ 1, 8. That declaration and the Note itself are together sufficient evidence to support the loss amounts asserted for unpaid principal, interest, and late fees. *See Vill. Bank & Tr., N.A. v. Clean Smiles Dental, PLLC*, No. 3:20-CV-3653-S-BH, 2021 WL 4268283, at *6 (N.D. Tex. Aug. 30, 2021) (Ramirez, Mag. J.), *report and recommendation adopted*, 2021 WL 4267509 (N.D. Tex. Sept. 17, 2021) (Scholer, J.). However, the

Court declines to award $2,182.01 in purported "curtailment penalty" fees because the Note does not demonstrate a clear contractual basis for those fees. Nor has FCB alleged any *factual* basis for a curtailment penalty in its Motion or in the Complaint. *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). Accordingly, the Court awards contract damages totaling $465,863.56.

    2.    <u>The Court Awards $9,440.27 in Attorney's Fees and Costs.</u>

"In Texas, attorney's fees are recoverable only when provided by statute or by contract between the parties." *BITCO Gen. Ins. Corp. v. Acadia Ins. Co.*, 427 F. Supp. 3d 838, 857 (E.D. Tex. 2019) (collecting cases). The same goes for non-taxable costs of court. *See Webb Consol. Indep. Sch. Dist. v. Marshall*, 690 S.W.3d 698, 709 (Tex. App.—San Antonio 2023), *aff'd*, No. 24-0339, 2026 WL 1108676 (Tex. Apr. 24, 2026). Here, the Note, the loan agreement, and both guaranty agreements provide for attorney's fees. *See* Note, 2; Doc. 1-2, Compl. Ex. 2, Loan Agreement, 4; Doc. 1-3, Compl. Ex. 3, New Dawn Hospice Guaranty, 2; Doc. 1-4, Compl. Ex. 4, Tailor-Made Fin. Servs. Guaranty, 2. Accordingly, an award of attorney's fees and costs is appropriate here.

"In determining the appropriate amount of attorney's fees, a district court first must calculate the 'lodestar' by 'multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers.'" *Rodney v. Elliott Sec. Sols., LLC*, 853 F. App'x 922, 924 (5th Cir. 2021) (quoting *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998)).

FCB requests $18,973.20 in attorney's fees. In support of this figure, FCB attaches the declaration of David Clem—FCB's lead counsel in the case. *See generally* Doc. 10-4, Mot. Ex. D, Decl. Clem. In his declaration, Mr. Clem provides background on his own experience, as well as the experience of attorney David Tambussi and paralegal Kenna Lemon—all of whom logged hours

working on this case. *See id.* ¶¶ 4-7. Mr. Clem also provides the billing rates used on this case, *see id.* ¶ 10, and a breakdown of hours by task completed, *see id.* ¶¶ 14-16. For his, Mr. Clem asserts that a fee award of $18,973.20, attributable to billed and unbilled work already performed, is appropriate. *See id.* ¶¶ 20, 39. Having reviewed Mr. Clem's declaration and the attached invoices, the Court awards FCB $8,223.20 in attorney's fees. That amount is properly supported with client invoices and represents specific hours actually billed. *See id.* ¶¶ 14-15; *id.* at 9-20 (attaching client invoice).

Plaintiff also seeks an additional $10,750. This amount, Mr. Clem explained, was an estimate of additional work that had yet to be performed but was necessary to finalize the present Motion. *See id.* ¶ 16. It is not supported by any actual invoices and does not purport to provide actual hours billed. Thus, the Court cannot award those fees at this time. If FCB continues to seek those remaining attorney's fees, it may file a properly supported motion for attorney's fees in accordance with Federal Rule of Civil Procedure 54(d)(2).

FCB also requests litigation costs totaling $1,342.07. *See id.* ¶ 19. FCB itemizes this figure as costs for filing the complaint, pro hac vice admission costs, service of process costs, and certain Texas UCC and docket searches. *See id.* The Court declines to award costs attributable to pro hac vice admission ($125). *See id.* Courts in this Circuit frequently deny pro hac vice admission fees as costs because they are effectively what "an attorney pays for the privilege of practicing law in this Court and are not normally charged to a fee-paying client." *Midland Nat'l Life Ins. Co. v. Santana-Ayala*, No. 5:19-CV-00591-JKP, 2020 WL 33598, at *5 (W.D. Tex. Jan. 2, 2020) (citations omitted). However, the Court finds that FCB's other requested costs of court are reasonable and awards $1,217.07.

3.      The Court Awards Pre-Judgment Interest.

"[T]here is a strong presumption in favor of awarding prejudgment interest," *United States v. Ocean Bulk Ships, Inc.*, 248 F.3d 331, 344 (5th Cir. 2001), and "a prevailing plaintiff's request for an equitable award of prejudgment interest should be granted 'in all but exceptional circumstances.'" *Kimberly-Clark Corp. v. Factory Mut. Ins.*, No. 3:05-CV-2097-B, 2007 WL 4245493, at *1 (N.D. Tex. Nov. 30, 2007) (Boyle, J.) (quoting *Bituminous Cas. Corp. v. Vacuum Tanks, Inc.*, 75 F.3d 1048, 1057 (5th Cir. 1996)). "State law governs the award of prejudgment interest in diversity cases." *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 172 (5th Cir. 2010) (citation omitted). For successful breach of contract claims, Texas courts apply a rate that is the "lesser of the rate specified in the contract or eighteen percent a year." *2017 Yale Dev. LLC v. Holtzapple Neal Props. Grp. LLC*, No. 01-23-00305-CV, 2025 WL 1225107, at *8 (Tex. App.—Houston [1st Dist.] Apr. 29, 2025, no pet.) (other citation omitted) (citing Tex. Fin. Code Ann. § 304.002).

As calculated by FCB, for pre-judgment interest accruing after March 5, 2026, the Note's contract rate equates to per diem of $112.36. *See* Doc. 10-1, Decl. DiBiase ¶ 9. But the Court disregards that figure for all pre-judgment interest awarded after March 5, 2026.[1] Instead, the Court applies the specific rate provided for in the Note—which may or may not equate to the per diem amount presented. The Note sets the applicable interest rate at 2.75% above the prime rate, adjusted quarterly. *See* Note, 1-2. Finding this rate appropriate (and below 18% for the duration of this action), the Court applies it here. Having already awarded contractual interest accrued before March

---

[1] Pre-judgment interest accruing before that date is already accounted for in the Court's award of actual damages.

5, 2026, additional pre-judgment interest will accrue at 2.75% above the prime rate, adjusted quarterly from March 5, 2026, until the day before the Court enters final judgment.

    4.    <u>The Court Awards Post-Judgment Interest.</u>

FCB also requests post-judgment interest. *See* Doc. 10, Mot. ¶ 30. The Court need not enter a specific order granting FCB's request for post-judgment interest, as it is mandated by statute and "awarded as a matter of course." *Meaux Surface*, 607 F.3d at 173; *see* 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."). The post-judgment interest will be fixed in accordance with § 1961(a) on the date the Court enters judgment.

## IV.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS** FCB's Motion for Default Judgment (Doc. 10). The Court:

- **GRANTS** FCB's request for actual damages in the amount of $465,863.56;

- **GRANTS** FCB's request for attorney's fees and costs in the amount of $9,440.27;

- **GRANTS** FCB's request for pre-judgment interest after March 5, 2026, at the rate set in the Note; and

- **GRANTS** FCB's request for post-judgment interest at a rate to be fixed at final judgment.

A final judgment will follow.

SO ORDERED.

SIGNED: June 23, 2026.

_____
JANE J. BOYLE
SENIOR UNITED STATES DISTRICT JUDGE